McLEAN v. TOWLE and others.

A surety in a debt secured by mortgage on lands of the principal, on paying off the debt, becomes subrogated in equity to the rights of the creditor, and is entitled to foreclose the mortgage in his own name.

So where one owning lands which he had mortgaged, sold them to M. who assumed the mortgage debt, and M. sold them to T. who assumed the mortgage in like manner, and M. was then compelled by the original debtor, for his indemnity, to pay to the creditor the amount of the mortgage ; it was *held*, that M. could foreclose the mortgage against P. and the lands mortgaged.

*Held*, also, that M.'s right to foreclose was perfect without an assignment of the bond and mortgage ; and an agreement by M. to forbear collection on receiving such assignment, was without consideration and invalid.

In equity a mortgage is not extinguished by such payment made by a surety.

September 3 ; November 26, 1845.

THIS was a bill filed by Cornelius McLean, to foreclose a mortgage, executed by Aaron Marsh to Noah T. Pike, on the 18th of January, 1839, to secure $3000, according to the tenor of a bond given by Pike therewith. On the 30th of April, 1841, Marsh sold and conveyed the equity of redemption in the mortgaged premises subject to the mortgage, to McLean, who by the terms of the deed to him, assumed the payment of the bond and mortgage as a part of the consideration money. On the 12th of August, 1841, McLean sold and conveyed the premises to J.

Towle, subject to the mortgage, who in like manner assumed the payment of the bond and mortgage. The mortgage having become due, and Towle and McLean neglecting to pay it, Marsh filed his bill against Pike, McLean and Towle, upon which a decree was made on the 21st of December, 1843, directing McLean and Towle to pay to Pike, the amount of the mortgage debt, so as to exonerate Marsh. (See the case reported, 1 Sand. Ch. R. 210.) Marsh issued an execution on the decree, upon which McLean was compelled to pay the debt. Pike then assigned the bond and mortgage to McLean. This was on the 7th of March, 1844, and on the 30th of April following, this suit was commenced by McLean.

The answer of Towle and wife alleged that Pike was induced to assign the bond and mortgage to McLean, instead of cancelling them, by Towle's exertions, and that McLean thereupon agreed not to require payment from Towle, till the 1st of June, 1844. They also insisted, that the mortgage was discharged by McLean's payment to Pike, and ceased to be a lien. Also that the suit and decree in the case of Marsh against Pike, was a bar to this suit.

Testimony was taken on the agreement of McLean to forbear payment.

*J. M. Martin,* for the complainant.

*N. D. Ellingwood,* for the defendants Towle and wife.

THE ASSISTANT VICE-CHANCELLOR.—When the mortgage in question was before this court in the suit of *Marsh* v. *Pike,* (1 Sandford's Ch. R. 210,) I decided that it was competent for Marsh, on paying the amount of the mortgage to Pike, to enforce its lien in his own name, against those who succeeded to him in the title to the equity of redemption. The Chancellor affirmed this doctrine on the appeal from my decree—(10 Paige's R. 595.)

The same principle extended to McLean, and on his paying the amount, he became entitled to the same remedy against Towle for the collection of the debt out of the mortgaged premises.

His right to this relief was perfect without any assignment of the bond and mortgage. If Pike had refused to deliver to him the securities, as well as to execute an assignment, it might have been necessary for McLean to make Pike a party with Towle, in his suit to enforce the mortgage. This however was an affair with which Towle had no concern, inasmuch as the costs occasioned by it would of course devolve upon Pike.

An assignment from Pike being unnecessary for the protection or security of McLean's rights, there is no valid consideration for the agreement set up in the answer, founded upon Towle's procuring Pike to make such assignment.

It may have been unfair and dishonorable in McLean to violate that agreement; but if it were, it does not furnish a ground for influencing the determination of this court. I must proceed on the legal and equitable rights of the parties, as ascertained by law.

It is said that the decree in *Marsh* v. *Pike* extinguished the mortgage. This was not its effect, when the money came from the surety, McLean. The decree directed Marsh to be exonerated, by a payment to Pike. If Towle had paid the amount, the mortgage would have been discharged. But on his surety paying it, equity at once subrogated the surety to the rights of the mortgagee, and kept the security on foot for his protection.

Further it is urged that the former decree gave to McLean all the remedy he needed, and if it did not, he should have obtained it by a petition in that suit.

As to this, the decree in Marsh's suit gave only a personal remedy against Mr. Towle. And it does not appear that there were sufficient parties in that suit, to enable the court to decree a foreclosure of the mortgage, either in the first instance or in an application on the foot of the decree.

For aught I can perceive, McLean was compelled to commence a new suit in order to obtain a regular decree for the sale of the mortgaged premises.

He is entitled to such decree for the amount of his debt and costs.